## SWEET v. PERKINS et al.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

HIGHWAYS—OBSTRUCTIONS—ADJOINING OWNERS—RIGHTS.

Defendants, who owned a farm adjoining a highway contiguous to the place of the accident, had drawn a pile of compost onto the highway, about 170 feet long, 14 to 15 feet wide, and from 2 to 4 feet high, extending to within 4 feet of the beaten track, and occupying nearly one-third of the highway. The pile had remained there for four months, when, as plaintiff was driving along the highway at night, his horse became frightened at an automobile, so that he suddenly veered to one side, running the vehicle onto the pile of manure, overturning the vehicle, and permanently injuring plaintiff. *Held*, that the manure pile constituted

an unlawful obstruction of the highway, rendering defendants liable for the injury sustained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Highways, § 509.]

Spring and Kruse, JJ., dissenting.

Appeal from Trial Term.

Action by Oscar H. Sweet against Charles H Perkins and others. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Horace Maguire and S. K. Williams, for appellants.

Durfee & Lines, for respondent.

NASH, J.  The law with respect to public highways and to freshwater rivers is the same, and the analogy perfect, as concerns the right of soil. The presumption is that the owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Being owners of the soil, they have the right to all ordinary remedies for the freehold. They may maintain an action for ejectment for encroachments upon the road, or an assize, if disseised of it, or trespass against any person who digs up the soil of it, or cuts down any trees growing on the side of the road and left there for shade or ornament. The freehold and all profits belong to the owners of the adjoining lands. 3 Kent, 432. A man shall be deemed in actual possession of a highway passing through his lands, and may maintain trespass against another for any use of the road, except for the purposes of traveling, as for cutting timber, digging in the soil, piling boards, or any other exclusive appropriation of the soil. By laying out a road the public acquire a mere right of traveling, and every other right belongs to the owner as exclusively, and he has the same remedy for enforcing it as if the highway had never existed. 1 Cow. Treatise, 371.

For an appropriation of the soil of a road trespass lies by the owner of the land through which the road passes. Gidney v. Earl, 12 Wend. 98. By the court (Nelson, J.) :

"The public highways in this state were generally laid out and opened according to the provisions of some statute law existing at the time. Prescription, or use of 20 years or more of a road, gives to the public a right to the enjoyment of it for that purpose in some cases. The right of way, public or private, is but an incorporeal hereditament, an easement which, per se, does not divest the owner of the fee of the land; and for every other purpose, except the use or servitude as a public highway, the soil belongs to him, and he is entitled to the same remedies for an injury to this residuary interest that he would be entitled to if it was entire and absolute. When, therefore, a road runs through a man's close, prima facie the fee of the land over which the road passes belongs to him as much as it does in any other part of the lot or tract. The law will not presume a grant of a greater interest or estate than is essential to the enjoyment of the public easement. The rest is parcel of the close. The fact that the highway is fenced on each side is for the convenience of the owner, and has no necessary connection with the road. It follows from the above view that the person in possession of the farm or lot through which the highway passes is in contemplation of law, in possession of the highway, subject to

the public easement; for, being in possession of the lot, he is prima facie in possession of every parcel of it."

A highway, though common to all people, is said to be nothing but an easement on the lands over which it passes. The public have no other right in it than the right of passage, with the powers and privileges incident to that right, such as digging the soil and using the timber and other materials found within the space of the road, in a reasonable manner, for the purpose of making and repairing the road and its bridges. The owner of the soil still retains his exclusive right in all the mines, quarries, springs of water, timber and earth, for every purpose not incompatible with the public right of way. While this rule as to the extent of interest which the public acquires in highways is strictly true as to highways in the country, it must be taken with some limitation as to the streets of a city or large village. There are certain uses, such as the construction of sewers and the laying of gas and water pipes, to which the latter are generally applied. These—called "urban servitudes"—are the necessary incidents of streets in large cities, and are paramount to the rights of the owner of the fee. Thompson on Highways, pp. 25, 26. The ownership of the fee and right of possession necessarily carries with it the full use and enjoyment of the soil for every purpose not incompatible with the public use. The abutting owner may, therefore, use the portion of the highway not required for public travel, cultivate the soil, store upon it crops, and, as was done by the defendants, store compost or manure for use upon the adjoining land.

This is the view taken of the rights of the public in highways in Massachusetts. In Howard v. Inhabitants of North Bridgwater, 16 Pick. 189, the plaintiff was driving on the highway, when, by accident, the bolt by which the whippletree was fastened to the cross-piece came out, and the whippletree fell suddenly upon the horse's legs, whereupon he was frightened and broke from the harness, and ran with great violence upon large loose stones which lay in the road, and broke his leg. The stones were seven feet, eight inches from the cart rut. Per curiam:

"From the facts in the case it appears that no negligence is imputable to the plaintiffs, that the injury to their horse was occasioned by the stones in the highway as alleged in the declaration, and that the defendants had notice of the obstruction; and the only question is whether these stones constituted such an obstruction as renders the defendants liable for the injury sustained by the plaintiffs. If it was such an obstruction as they were bound to remove, they are answerable. It is necessary that we should consider what is required of towns. The statute provides that highways shall be kept in repair and amended from time to time, that the same may be safe and convenient for travelers, with their horses, etc. Of course, travelers are to use due diligence to avoid accidents, and towns are to keep the highways in such condition that travelers using such care may go safe. We think it clear that this provision does not mean that the whole of the road, from one boundary to the other, shall be made smooth. But there may be such obstructions out of the beaten path as will render the road unsafe, such, for instance as would frighten horses. We think the obstruction complained of was not a defect for which the defendants are liable."

In Hoffart v. Town of West Turin, 90 App. Div. 345, 85 N. Y. Supp. 471, the right of the pile of wood to be or be placed upon the side of the highway was not questioned.

The judgment should be reversed, and a new trial granted upon questions of law only.

McLENNAN, P. J., concurs. WILLIAMS, J., votes for reversal on the ground that the verdict is excessive.

Judgment and order denying motion for new trial on the minutes reversed, and new trial ordered, with costs to the appellant to abide the event.

SPRING, J. (dissenting). After dark in the early evening of the 28th of September, 1903, the plaintiff was driving along a public highway from the village of Newark, in the county of Wayne, when he met an automobile which frightened his horse so that he suddenly veered to one side, running upon a pile of muck at the side of the road, overturning the vehicle, and permanently injuring the plaintiff. The defendants own a farm contiguous to the place of the accident. They had drawn muck by the side of the road from their hogyard in May and June prior to the accident, because it was more convenient to keep it in that place than on the farm. The pile was about 170 feet in length, 14 or 15 feet in width, and varying in heighth from 2 to 4 feet, and extended to within 4 feet of the beaten track. Nearly one-third of the highway, therefore, was appropriated by this pile of hog manure for four months. The land was comparatively level, so that the whole highway between the fences could be driven over. It is claimed that this was a lawful use of the highway by the defendants because they were the adjacent proprietors and their fee extended to its center. I do not so understand the authorities.

In Cohen et al. v. Mayor, etc., 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506, a wagon was stored in the highway in front of the premises of the adjacent owner, and the court in commenting on the right to use the highway for this purpose says, at page 535:

"The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose."

And again:

"It is no answer to the charge of nuisance that, even with the obstruction in the highway, there is still room for two or more wagons to pass, nor that the obstruction itself is not a fixture. If it be permanently, or even habitually, in the highway, it is a nuisance. The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets. The old cases said the king's highway is not to be used as a stable yard, and a party cannot eke out the inconvenience of his own premises by taking in the public highway. These general statements are familiar and borne out by the cases cited."

In Tinker v. N. Y., O. & W. R. R. Co., 157 N. Y. 312, 51 N. E. 1031, the defendant, the owner of the fee, had placed some timbers within the boundaries of the highway, at which the plaintiff's team was frightened, running away and throwing her from the wagon and she recovered in an action of negligence. The Court of Appeals in affirm-

ing the judgment say, at page 318, of 157 N. Y., at page 1032 of 51 N. E.:

"The primary purpose of highways is the use by the public in travel and transportation, and the general rule is that any one who interferes with such use commits a nuisance."

The court then comments upon the temporary appropriation which may be made by an adjacent owner as a matter of necessity. It indorses, in considering that question, the doctrine enunciated in Flynn v. Taylor, 127 N. Y. 596, 28 N. E. 418, 14 L. R. A. 556, where it was held, in order to justify such an obstruction, that:

"Two facts, however, must exist to render the encroachment lawful: (1) The obstruction must be reasonably necessary for the transaction of business. (2) It must not unreasonably interfere with the rights of the public."

Then the court in the Tinker Case add:

"It follows that, if the encroachment be not justified by these two facts, it is unlawful and a nuisance. * * * The rule relating to encroachments in highways is not confined to obstructions in the beaten track, but embraces all parts of the highway. Nor is it necessary that the injury should be done to the traveler coming in contact with the obstruction."

. To the same effect are Eggleston v. Columbia Turnpike R. R. Co., 82 N. Y. 281; Houghtaling v. Shelley, 51 Hun, 598, 3 N. Y. Supp. 904; Halstead v. Village of Warsaw, 43 App. Div. 39, 59 N. Y. Supp. 518; Dygert v. Schenck, 23 Wend. 445, 35 Am. Dec. 575.

The court permitted the jury to find whether this deposit of compost was a dangerous obstruction, one that impeded travel upon the highway, and the verdict established the question of fact in favor of the plaintiff upon that proposition; and its submission at all to the jury, in view of the undisputed evidence, is sufficiently favorable to the defendants. The defendants did not in their answer allege any right to pile the muck in the highway in front of their farm. They did not ask that any such question be submitted to the jury, and, in the motion for nonsuit, their counsel assumed that no such right existed. The evidence justified the jury in finding that the injuries would not have happened to the plaintiff except for this compost heap. The land contiguous to the highway was level, the muck was piled up about four feet high, and as soon as the wheels of the cart ran upon it the vehicle was turned over. If the accident would not have occurred except for this unlawful obstruction in the highway, the defendants are liable, for the muck pile may be said to have been one of the including causes of the injuries to the plaintiff. Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574; Phillips v. N. Y. C. & H. R. R. R. Co., 127 N. Y. 657, 27 N. E. 978.

Nor do I think the court should interfere with the size of the verdict. If the story of the plaintiff and his witnesses is true, the jury have not awarded an unreasonable sum. If he is malingering, he is not entitled to substantial damages at all. The jury have passed upon this question, and there is no occasion for our interference, unless we set aside the verdict, and I do not think it is against the weight of the evidence.

I think the judgment should be affirmed, with costs.

KRUSE, J., concurs.